KAREN L. LOEFFLER
United States Attorney

STEVEN E. SKROCKI
YVONNE LAMOUREUX
Assistant U.S. Attorneys
Federal Building & U.S. Courthouse
222 West Seventh Avenue, #9, Room 253
Anchorage, Alaska 99513-7567
Phone: (907) 271-5071
Fax: (907) 271-1500
Email: steven.skrocki@usdoj.gov
yvonne.lamoureux@usdoj.gov

Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Case No. 3:11-CR-00028-RJB |
| | ) | |
| Plaintiff, | ) | **UNITED STATES' SENTENCING** |
| vs. | ) | **MEMORANDUM** |
| | ) | |
| KAREN L. VERNON, | ) | |
| | ) | |
| Defendant. | ) | |

COMES NOW the United States of America and submits this Sentencing

Memorandum for the sentencing scheduled for January 7, 2013, at 1:30 p.m.

## I. SUMMARY OF SENTENCING RECOMMENDATIONS

**TERM OF IMPRISONMENT** ............................ **188 Months (15.5 Years)**

**SUPERVISED RELEASE** ................................................................ **5 Years**

**SPECIAL ASSESSMENT** ................................................................**$100.00**

**FORFEITURE** ..................................................................**Not requested**

**FINE**..................................................................................**Not requested**

The United States Probation Office has prepared a presentence investigation report (PSR) in this case. The United States does not dispute the factual findings or legal conclusions of the PSR. It is the government's position that there exists sufficient evidence to support the factual findings of the PSR given the admissions in the plea agreement and the vast amount of evidence relied upon by the presentence report writer.

## II. BACKGROUND AND COUNTS OF CONVICTION[1]

Defendant Karen Vernon was charged with co-defendant Lonnie Vernon in an 8-count indictment, four of which charged Karen Vernon with Conspiracy to Murder Federal Officials in violation of 18 U.S.C. § 1117 (Count 1), Threatening Murder of Family Member of United States Judge in violation of 18 U.S.C. §§

---

[1] The PSR appropriately includes a number of facts regarding the conspiracy charged in Case 3:11-cr-0022 RJB. It is proper for the Court to take into account Karen Vernon's actions during the course of that conspiracy as well.

115(a)(1)(A) and (b)(4) (Count 2), Threatening Murder of United States Judge in violation of 18 U.S.C. §§ 115(a)(1)(B) and (b)(4) (Count 3), and Conspiracy to Possess Unregistered Firearm and Destructive Devices in violation of 18 U.S.C. § 371 (Count 4).  Karen Vernon pled guilty to Count 1, charging her with Conspiracy to Murder Federal Officials.  Her plea agreement is contingent on the plea entered by co-defendant Lonnie Vernon pursuant to his plea agreement.  The parties agreed that the applicable U.S.S.G. sentencing range is 188-235 months' imprisonment, with the United States agreeing to recommend a sentence of not more than 188 months and Karen Vernon is free to recommend a sentence below the U.S.S.G. range.

    As set forth in the PSR and the plea agreement, Karen Vernon, together with her husband and co-defendant Lonnie Vernon, conspired to murder a federal judge and his family members (including children) and an Internal Revenue Service (IRS) officer who had been involved in the Vernons' civil case for their failure to pay federal taxes.  In numerous recorded conversations between February and March 2011, Lonnie and Karen Vernon talked about killing the federal judge, members of his family, and the IRS officer.  In addition to all the firearms and thousands of rounds of ammunition in their home, Lonnie and Karen Vernon were seeking to acquire additional weapons to use to murder the federal officials and family members.  In addition to taking those active steps, Lonnie and Karen

Vernon had compiled personal information about their victims, including addresses. At one point, the Vernons handed a confidential informant a piece of paper with the victims' addresses on it and showed the confidential informant a map with the highlighted routes showing how to get to those addresses. The Vernons planned to conduct additional surveillance of the addresses after they completed their purchase of a suppressed pistol and hand grenades. The Vernons also discussed the logistics of executing the murders at multiple residences. PSR ¶ 96. However, after the Vernons paid for the suppressed pistol and grenades, they were arrested. Both Karen and Lonnie Vernon were carrying loaded firearms during the weapons transaction.

    Regarding Case No. 3:11-cr-00022, Karen and Lonnie Vernon hid Francis August Schaeffer Cox in their home after Cox failed to appear for a state court hearing on February 14, 2011 and a warrant was issued for Cox's arrest. There are recorded conversations between the Vernons and Cox on February 14 and 15, 2011 regarding killing federal and State of Alaska officials. PSR ¶¶ 71-74, 76-77. Karen and Lonnie Vernon also attempted to obtain a list that Cox had ordered compiled from one of his associates, Mike Anderson. This list was said to contain the names and addresses of numerous state and federal officials, including law enforcement officers and judges. PSR ¶¶ 75, 80.

The same day as the arrests, law enforcement executed federal and state search warrants on the defendants' residences and vehicles. In the truck the Vernons drove to the weapons transaction, the Vernons had two assault rifles, additional handguns, several hundred rounds of ammunition, together with a map with post-it notes of the federal judge's family's addresses and the routes to those locations highlighted on the map. The Vernons had other documents in their truck, including sovereign citizen paperwork and 13 letters addressed to numerous friends and family referencing their long dispute with the IRS. The letters stated that "[i]f you are receiving this, it is because we are no longer living" and that "[w]e will not FREELY GIVE our home, land and personal property to this tyrant, nor will we die cowards, licking their jack-boots. We did not go down without resistance and standing for our rights, the lead deficiency of those who came to take ours from us, was corrected as best we could." PSR ¶ 113. In their residence, the Vernons had numerous loaded firearms staged throughout the house, an improvised blasting cap, a booby trap device, body armor, and the Anarchist cookbook.

## III. GUIDELINE APPLICATIONS

### A. Base Offense Level

The PSR found that the defendant's conduct has a base offense level of 33 under U.S.S.G. § 2A1.5(a) because the defendant's offense of conviction was for

violating 18 U.S.C. § 1117. PSR ¶ 125. This base offense level is not contested by the parties and is consistent with the parties' agreement set forth on page 16 of the plea agreement.

### B. Victim Related Adjustment: U.S.S.G. § 3A1.2(b)

Six points are added under U.S.S.G. § 3A1.2(b) as the victims here include an employee of the IRS and an employee of the Judiciary and his immediate family members. (*See* attached letter under seal, Exhibit 1, Victim Impact Statement). This enhancement is consistent with the parties' agreement set forth on page 16 of the plea agreement.

### C. Acceptance of Responsibility

The United States agrees with the PSR that the defendant is entitled to a three-point reduction for acceptance of responsibility so long as Karen Vernon does not act in a manner inconsistent with acceptance of responsibility. *See* Supplement to United States' Sentencing Memo. The defendant indicated her willingness to plead guilty in a timely manner. This is also consistent with the parties' agreement set forth on pages 16-17 of the plea agreement.

### D. Criminal History Category Computation

There is no dispute that Karen Vernon's criminal history category is Category I.

### E. Recommended Sentence

The advisory U.S.S.G. range for Karen Vernon with a Criminal History Category I and an offense level of 36 is 188-235 months' incarceration. For the reasons set forth below, the government recommends a sentence of 188 months' incarceration.

## IV. APPLICATION OF 18 U.S.C. § 3553(a)

The crime itself and the history and characteristics of the defendant are factors the Court must consider when fashioning an appropriate sentence for the defendant. An application of the factors set forth in 18 U.S.C. § 3553(a) firmly supports the imposition of 188 months' incarceration with five years' supervised release.

### A. The nature and circumstances of the offense.

The defendant's conduct in conspiring to murder an IRS officer, a federal judge, and his family members (including his children and grandchildren) is extremely serious. The defendant engaged in numerous conversations not only about murdering those individuals, but also about murdering other federal and state officials (including law enforcement). In addition to discussing plans and tactics for carrying out these murders, the defendant took active steps to acquire personal information about the victims and more weapons to execute their plans. The dangerousness of the defendant's conduct cannot be overstated. The defendant and

her co-defendant were in the process of taking further steps to carry out their plans when they were interrupted and arrested by law enforcement. The nature and circumstances of the offense alone compel a very lengthy term of imprisonment.

### B. The history and characteristics of the defendant.

The government does not dispute that Karen Vernon is 66 years old and does not have a criminal history. However, the defendant holds strong beliefs that she is not subject to the jurisdiction of the state or federal governments. It was her dispute with the IRS for failing to pay her taxes that motivated her to conspire to murder the federal officials involved in her civil tax case. Instead of working to resolve their unpaid taxes, Karen and Lonnie Vernon developed a plan to murder the federal officials.

### C. The need for the sentence to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment.

The sentence must reflect the seriousness of the offense, promote general respect for the law, and provide just punishment. Karen Vernon's conduct was extremely dangerous, threatening the lives not only of federal officials, but also their family members. The Vernons' crimes impacted not only the individual victims, but also the larger Fairbanks community, including the law enforcement community. The Vernons' actions, together with their recorded statements and the documents found in their residence and vehicle, indicate that they do not respect

the law. A sentence of 188 months' imprisonment will reflect the seriousness of Karen Vernon's conduct and emphasize the necessity of following the law.

### D. The need for the sentence to afford adequate deterrence to criminal conduct.

The sentence must be sufficient to adequately deter criminal conduct, both for the defendant and the general community. Conspiring to murder federal officials must, of course, be deterred. The risk to the lives of public servants is too great to not impose a sentence that deters this conduct.

### E. The need for the sentence to protect the public from further crimes of the defendant and to provide the defendant with needed treatment.

The recommended sentence will adequately protect the public from future crimes by the defendant while she is incarcerated.

### F. The kinds of sentences available and the sentencing range.

Given the defendant's position on the sentencing guidelines scale, there are not other types of sentences available aside from imprisonment. With a Criminal History Category of I and an Offense Level of 36, the Guideline range is 188-235 months' imprisonment. The statutory maximum term of imprisonment is life.

The Guidelines are advisory, not mandatory, *United States v. Booker*, 543 U.S. 220 (2005), and the sentencing court may not simply presume that the Guideline range is reasonable. *Nelson v. United States*, 555 U.S. 350, 352 (2009);

*Rita v. United States*, 551 U.S. 338, 351 (2007). However, the sentencing court must still carefully and correctly calculate the Guideline range, and this "remains the starting point" for any sentencing determination. *United States v. Ameline*, 409 F.3d 1073, 186 (9th Cir. 2005).

### G. Pertinent policy statements.

There are two policy statements pertinent here: Weapons and Dangerous Instrumentalities under U.S.S.G. § 5K2.6 and Public Welfare under U.S.S.G. § 5K2.14.

### H. The need to avoid unwarranted sentence disparity.

The Court must consider the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct. The sentence sought takes into account the full range of Karen Vernon's offense conduct. Karen Vernon's co-defendant in this case, Lonnie Vernon, faces a binding sentencing range of 262-327 months' imprisonment (a range of approximately 21 to 27 years). The United States is recommending a sentence of 320 months' imprisonment for Lonnie Vernon for this case and Case 3:11-cr-22-RJB. In Case 3:11-cr-22-RJB, the United States is recommending a sentence of 420 months' imprisonment for Francis August Schaeffer Cox (whose guidelines range is life). The recommendation of 188 months' imprisonment for Karen

Vernon is based on the totality of the offense conduct and the history and characteristics of the defendant.

### I. Fine, Restitution, Forfeiture.

The United States agrees that the defendant will be unable to pay a fine. Restitution and forfeiture are not issues in this case.

### J. Victim Impact Statement.

The United States has filed with the Court a victim impact statement from an immediate family member of Chief Judge Ralph R. Beistline. The letter is provided to the Court under seal.

As to the victim impact statement, the letter provides the Court with real and personal information as to the impact the actions of the Vernons had and continue to have on individuals not directly related to the case. The only connection for this victim in particular is due to the fact that her father is a United States District Court Judge who was assigned to the Vernons' civil tax case. The sentence sought here will ensure that the Vernons will remain incarcerated for an extensive period of time, thus nullifying the threat they posed to the victims in this case.

### V. CONCLUSION

Soon after Karen and Lonnie Vernon purchased a suppressed pistol and hand grenades, they were, within a very short time, going to act on their stated plans to murder a United States District Court Judge and members of his immediate family.

U.S. v. K. Vernon                                             11
3:11-cr-00028-RJB

Case 3:11-cr-00028-RJB   Document 147   Filed 12/31/12   Page 11 of 12

Given their stated and expressed intentions to murder Judge Beistline and members of his family, and by the clear evidence that they were prepared to act quickly on those intentions, the sentence sought here by the United States is appropriate. The seriousness of the defendant's crimes supports an imposition of sentence of 188 months' imprisonment followed by five years' supervised release.

RESPECTFULLY SUBMITTED this 31st day of December, 2012, in Anchorage, Alaska.

KAREN L. LOEFFLER
United States Attorney

s/ Steven E. Skrocki
STEVEN E. SKROCKI
Assistant U.S. Attorney
United States of America

s/ Yvonne Lamoureux
YVONNE LAMOUREUX
Assistant U.S. Attorney
United States of America

**CERTIFICATE OF SERVICE**
I hereby certify that on December 31, 2012, a copy of the foregoing was served electronically on:

Darrel Gardner

s/ Yvonne Lamoureux
Office of the U.S. Attorney